**Case No.:**
**In Re Search Of:**    Information Associated with the Gmail account(s)
**floopiemathew@gmail.com,** from August 2020 through present, that is
stored at the premises controlled by Google, LLC

## AFFIDAVIT

### INTRODUCTION AND AGENT BACKGROUND

I, Heather Call, being duly sworn, hereby depose and state:

1.      Your affiant, Heather Call, employed with the Newport News Police Department (NNPD) since June 2004, and more specifically with the Special Victims Unit since July 2011. This assignment has afforded me the opportunity to investigate and/or arrest and prosecute numerous individuals for crimes relating to the neglect and abuse of children in violation of the Virginia (VA) State Code. I have previously been involved in criminal investigations concerning violations of federal laws. Those investigations included, but are not limited to, child exploitation and child pornography. Since joining the NNPD your affiant has attended specialized training courses in child/adolescent interviewing, human trafficking, identifying and seizing electronic evidence, and computer forensic, recovery, and social site investigations.

2.      I am currently assigned as a Master Police Detective with the Newport News Police Department, Criminal Investigations Division, Special Victims Unit, as well as a Task Force Officer (TFO) assigned to the Federal Bureau of Investigation, Norfolk Division Child Exploitation Task Force. I have participated in investigations involving sexual assaults, persons who collect and distribute child pornography, and distribution of materials relating to the sexual exploitation of children. I have received training from the FBI in the areas of sexual assaults and child exploitation, and I have reviewed images and videos of child pornography in a wide variety of media forms, including computer media. I have also discussed and reviewed these materials

1

with other law enforcement officers.

3.    In the course of my employment as a sworn law enforcement officer, I have participated in the execution of numerous search warrants resulting in the seizure of computers, magnetic storage media for computers, other electronic media, and other items evidencing violations of state and federal laws, including various sections of Title 18, United States Code § 2251 *et. seq.* involving child exploitation offenses.

4.    I was deputized as a Special Deputy United States Marshal on June 16, 2014. As a Special Deputy United States Marshal, your Affiant is authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

5.    The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and the review of documents and records.

## LOCATION

6.    This affidavit is made in support of an application for search warrant for information associated with the Google LLC and Google Drive account(s): **floopiemathew@gmail.com**, that is or was stored at the premises owned, maintained, controlled, or operated by Google LLC, a company whose custodian of records is located at 1600 Amphitheatre Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A and B. This affidavit is made, in part, in support of an application for a search warrants under 18 U.S.C. §2703(a), 2703(b)(1)(A), and 2703 (c)(1)(A) to require Google LLC to disclose to the Government records or other information in its possession, pertaining to the subscriber or customer associated with the account, including the contents of communications.

2

7.     This affidavit is based upon information that I have gained from my investigation, my training and experience, as well as information obtained from other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities (described in Attachments A and B) of violations of Title §2252A(a)(1), 2252A(a)(2), and 2252A(a)(5)(B) are within the information associated with the Google account mentioned above.

## PERTINENT FEDERAL CRIMINAL STATUTES

8.     This investigation concerns alleged violations of Title 18, United States Code, §2252A(a)(1), §2252A(a)(2), and §2252A(a)(5)(B), relating to material involving the sexual exploitation of minors.

9.     Title 18, United States Code §§ 2252A(a)(1) prohibits a person who knowingly mails, transports, or ships child pornography using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography.

10.     Title 18 United States Code § 2252A(a)(2) makes it a federal criminal offense to knowingly receive or distribute any child pornography or materials that contains child pornography that has been mailed or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

11.     Title 18, United States Code, § 2252A(a)(5)(B) prohibits a person from knowingly possessing, or knowingly accessing with intent to view, any book, magazine, periodical, film,

3

videotape, computer disk, or other material that contains an image of child pornography that has been mailed, shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## OTHER LEGAL AUTHORITY

12.    The legal authority for this search warrant application regarding the accounts is derived from 18 U.S.C. §§ 2701-2711, entitled "Stored Wire and Electronic Communications and Transactional Records Access." Section 2703(a) provides in relevant part as follows:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of an electronic communication that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of an electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

13.    18 U.S.C. § 2703(b) provides in relevant part as follows:

> (1) A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection –
>
> > (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant.
>
> (2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service –
>
> > (A) On behalf of, and received by means of electronic

4

transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

14. The government may also obtain records relating to e-mail communications, such as subscriber identifying information, by way of a search warrant. 18 U.S.C. § 2703(c)(1)(A).

15. 18 U.S.C. § 2703(b)(1)(A) and 2703(c)(1)(A) allow for nationwide service of process of search warrants for the contents of electronic communications and records concerning electronic communication service or remote computing service if such warrant is issued by a court with jurisdiction over the offense under investigation.

16. This investigation involves offenses within the jurisdiction and proper venue of the United States District Court for the Eastern District of Virginia, as more fully articulated below. *See* 18 U.S.C. § 3237(a); see also 18 U.S.C. §§ 3231 and 3232. *See United States v. Bagnell*, 679 F.2d 826, 830 (11th Cir. 1982) (venue is proper in child pornography and obscenity prosecution in district where images were either distributed or received).

## DEFINITIONS

17. The terms "records," "documents," and "materials" include all information recorded in any form, including the originals and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, including, but not limited to the following:

    a.    graphic records or representations;
    b.    photographs;
    c.    pictures;

d.    images, and
e.    aural records or representations.

18.    The terms "records," "documents," and "materials" include all of the foregoing, in whatever form and by whatever means, the records, documents, or materials, and their drafts, or their modifications may have been created or stored, including (but not limited to): any electrical, electronic, or magnetic form (including but not limited to any information on an electronic or magnetic storage device such as hard disks).

19.    The terms "minor" and "sexually explicit conduct" are defined in 18 U.S.C. Section 2256(1) and (2). A "minor" is defined as "any person under the age of eighteen years." The term "sexually explicit conduct" means actual or simulated:

a.    Sexual intercourse, including genital genital, oral genital, anal genital, or oral anal, whether between persons of the same or opposite sex;
b.    Bestiality;
c.    Masturbation;
d.    Sadistic or masochistic abuse; or
e.    Lascivious exhibition of the genitals or pubic area of any person.

20.    The term "computer" as used herein is defined pursuant to Title 18 U.S.C. Section 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

21.    The term "Universal Resource Locator" (URL): A URL is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies the specific computer on the

6

Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

22.     The term "Internet Protocol Address" (IP Address): This term refers to the fact that every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number.  An example of an IP address is 192.168.10.102.  Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address.  There are two types of IP addresses; static and dynamic.  A static address is permanent and never changes, such as ones used in cable modems.  The dynamic address changes almost every time the computer connects to the Internet.

23.     The term "Internet Service Provider" (ISPs): This term refers to individuals who have an Internet account and an Internet-based electronic mail (e-mail) address must have a subscription, membership, or affiliation with an organization or commercial service which provides access to the Internet.  A provider of Internet access and services is referred to as an Internet Service Provider or "ISP".

24.     "Web hosts" provide the equipment and services required to host and maintain files for one or more websites and to provide rapid Internet connections to those websites. Most hosting is "shared," which means that multiple websites of unrelated companies are on the same server in order to reduce associated costs.  When a client develops a Website, the client needs a server and perhaps a web hosting company to host it.  "Dedicated hosting," means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of a website.  "Co location" means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a dedicated Internet connection, online security and online technical support.  Co location facilities offer

7

customers a secure place to physically house the customers' hardware and equipment as opposed to keeping it in their offices or warehouse, where the potential for fire, theft or vandalism is greater.

25.     "Electronic Communication Service" refers to any service which provides to users thereof the ability to send or receive wire or electronic communications. Title 18 U.S.C. Section 2510(15).

26.     "Remote Computing Service" is a service that provides to the public computer storage or processing services by means of an "electronic communications system." Title 18 U.S.C. Section 2711.

27.     "Electronic Communications System" means any wire, radio, electromagnetic, photooptical, or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications. Title 18 U.S.C. Section 2510(14).

28.     "Contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication. Title 18 U.S.C. Section 2510(8).

29.     "Electronic storage" means (a) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (b) any storage of such communication by an electronic communication service for purposes of backup protection of such communication. Title 18 U.S.C. Section 2510(17).

## TECHNICAL BACKGROUND

30.     E-mail is an electronic form of communication which usually contains written correspondence and graphic images. It is similar to conventional paper mail in that it is addressed from one individual to another and is usually considered private. An e-mail usually contains a

8

message "header" which generally displays the sender's e-mail address, the recipient's e-mail address, and the date and time of the e-mail transmission.

31.    If a sender chooses to do so, he or she can type a subject line into the header. E-mail message "headers" usually contain information, such as identification of the sender's ISP, which enables law enforcement officers to trace the message back to the original sender. In order to do so, information must be obtained from the sender's ISP through a Grand Jury or administrative subpoena.

32.    Google along with Microsoft and Yahoo Holdings Inc, are among other things, U.S.-based Internet Service Providers or "Web Hosts." The companies provide a full range of services including but not limited to: web based e-mail accounts, search engines, directories, travel resources, commercial services, and advertising. The company provides individuals with free web based e-mail accounts and services.

33.    In my training and experience, I have learned that the companies provide a variety of on-line services, including e-mail access, to the general public. Subscribers obtain an account by registering with the company. During the registration process, the company asks subscribers to provide basic personal information. Therefore, the computers of the company are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for the company's subscribers) and information concerning subscribers and their use of the company's services, such as account access information, e-mail transaction information, and account application information.

34.    In general, an e-mail that is sent to the company's subscribers is stored in the subscriber's "mail box" on the company's servers until the subscriber deletes the e-mail. If the

9

subscriber does not delete the message, the message can remain on the company's servers indefinitely.

35.    When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to the company's servers, and then transmitted to its end destination. The company often saves a copy of the e-mail sent.  Unless the sender of the e-mail specifically deletes the e-mail from the company's servers, the e-mail can remain on the system indefinitely.

36.    The company's subscribers can also store files, including e-mails, address books, contact or buddy lists, pictures, and other files, on servers maintained and/or owned by the company.

37.    Subscribers to the company might not store on their home computers copies of the e-mails stored in their account.  This is particularly true when they access their account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

38.    In general, e-mail providers like the company ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account.  This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

39.    E-mail providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the company's websites), and other log files that reflect usage of the account.  In addition, e-mail

10

providers often have records of the Internet Protocol address (IP address) used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

40.    In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.    E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

41.    In my training and experience, evidence of who was using an e-mail account and Instant Messenger accounts may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

## CHARACTERISTICS OF COLLECTORS OF CHILD PORNOGRAPHY

42.    Through my discussions with law enforcement officers who specialize in the investigation of child pornography, and of subjects who use the Internet and e-mail to gain access to child pornography, I have learned that individuals who use such technology are often child pornography collectors who download images and videos of child pornography. Moreover, I have learned that many subjects have saved numerous images to their hard drive, thumb drive, disks or CDs, and have kept that material for long periods of time. Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, in other visual media or from literature describing such activity.

b. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, drawings, or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, videotapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the

12

collector's residence, to enable the collector to view the collection, which is valued highly.

e. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## PROBABLE CAUSE

43. On September 20, 2022, the National Center for Missing and Exploited Children (NCMEC) received CyberTip 135219844 and subsequently passed it to Bedford County Sheriff's Office (BCSO). CyberTip 135219844 contained 30 files containing child sexual abuse material (CSAM) that had been uploaded to a Google account on August 16, 2020, October 31, 2020, November 13, 2020, October 28, 2021, November 3, 2021, and November 10, 2021. The CyberTip listed the suspect information as email addresses: **floopiemathew@gmail.com** and blink_drums@yahoo.com, Name: Floopie Mathew, date of birth September 29, 1992, and numerous IP addresses. Google noted a person at Google viewed two files to the extent necessary to confirm that it contained apparent child pornography concurrently to or immediately preceding

13

the sending of the Cybertip.  Your affiant reviewed those files which were viewed and they are described as follows:

    a. Original file name: IMG_20211110_025128_742.mp4: This is a video file approximately 1 minute 33 seconds in length.  It is of a nude prepubescent female bent over on a bed while an adult male engages in sexual intercourse with her.

    b. Original file name: IMG_20211110_025151_281.mp4: This is a video file approximately 1 minute 48 seconds in length.  It is of a nude prepubescent female rubbing her vagina and anus with her fingers.

44.    On September 20, 2022, the National Center for Missing and Exploited Children (NCMEC) received CyberTip 135231526 and subsequently passed it to Bedford County Sheriff's Office (BCSO). CyberTip 135231526 contained eight files containing CSAM that had been uploaded to a Google account on August 16, 2020, August 28, 2020, October 31, 2020, and November 10, 2021.   The CyberTip listed the suspect information as email addresses: **floopiemathew@gmail.com** and blink_drums@yahoo.com, Name: Floopie Mathew, date of birth September 29, 1992, and numerous IP addresses.  Google noted a person at Google viewed two files to the extent necessary to confirm that it contained apparent child pornography concurrently to or immediately preceding the sending of the CyberTip.  Your affiant reviewed those files which were viewed and they are described as follows:

    a. Original file name: IMG_20211110_025732_604.mp4: This is a video file approximately 18 seconds in length.  It is of nude male juvenile who is straddling an adult.  The juvenile is rubbing his penis on what appears to be the adult's buttocks.

14

    b. Original file name: 56e10c06-b1d3-4b4e-83b3-7030f5b550be.mp4: This is a video file approximately 23 seconds in length. It is of a nude prepubescent female who is kneeling in front of an adult male who is masturbating. The adult male ejaculates into her mouth and on her chest

45. On September 20, 2022, the National Center for Missing and Exploited Children (NCMEC) received CyberTip 135241293 and subsequently passed it to Bedford County Sheriff's Office (BCSO). CyberTip 135241293 contained one file containing CSAM that had been uploaded to a Google account on November 10, 2021. The CyberTip listed the suspect information as email addresses: **floopiemathew@gmail.com** and blink_drums@yahoo.com, Name: Floopie Mathew, date of birth September 29, 1992, and numerous IP addresses. Google noted a person at Google viewed the file to the extent necessary to confirm that it contained apparent child pornography concurrently to or immediately preceding the sending of the CyberTip. Your affiant reviewed the file that was viewed and it is described as follows:

    a. Original file name: VID_20211103_175253_339.mp4: This is a video file approximately 6 seconds in length. It is of a nude prepubescent female who is squatting and peeing.

46. On September 21, 2022, the National Center for Missing and Exploited Children (NCMEC) received CyberTip 135287067 and subsequently passed it to Bedford County Sheriff's Office (BCSO). CyberTip 135287067 contained one file containing CSAM that had been uploaded to a Google account on August 16, 2020. The CyberTip listed the suspect information as email addresses: **floopiemathew@gmail.com** and blink_drums@yahoo.com, Name: Floopie Mathew, date of birth September 29, 1992, and numerous IP addresses. Google noted a person at Google viewed the file to the extent necessary to confirm that it contained apparent child pornography

concurrently to or immediately preceding the sending of the CyberTip. Your affiant reviewed the file that was viewed and it is described as follows:

    a. Original file name: 4686fec8-5b38-4509-9a27-06de07108668.mp4: This is a video file approximately 1 minute 53 seconds in length. It is of a female juvenile with a blindfold over her eyes and she performs oral sex on an adult male.

47. On October 19, 2022, the National Center for Missing and Exploited Children (NCMEC) received CyberTip 137041845 and subsequently passed it to Bedford County Sheriff's Office (BCSO). CyberTip 137041845 contained one file containing CSAM that had been uploaded to a Google account on October 28, 2021. The CyberTip listed the suspect information as email addresses: **floopiemathew@gmail.com** and blink_drums@yahoo.com, Name: Floopie Mathew, date of birth September 29, 1992, and numerous IP addresses. Google noted a person at Google viewed the file to the extent necessary to confirm that it contained apparent child pornography concurrently to or immediately preceding the sending of the CyberTip. Your affiant reviewed the file that was viewed and it is described as follows:

    a. Original file name: def4c5a4-727d-43f8-a16d-cfd389892835.mp4: This is a video file approximately 5 seconds in length. It is of a prepubescent female who kisses an adult male's erect penis.

48. IP address 108.11.179.176 was captured during the file uploading process by the reported Google account in the following CyberTips: 135219844 (referenced in paragraph 43), 135231526 (referenced in paragraph 44), and 135241293 (referenced in paragraph 45). This IP address was also captured as a login IP address and listed in CyberTip 135287067 (referenced in paragraph 46).

49.     In an administrative subpoena dated July 20, 2023, Verizon was asked to provide account information for the IP address 108.11.179.176 (referenced in paragraph 48) for the following dates; October 31, 2020, November 13, 2020, and November 10, 2021 from various times.  Verizon provided a response stating that IP address was assigned from August 5, 2020 through January 17, 2022 to the customer Wayne Bieber, 548 Leonard Lane, Newport News, Virginia, 23601.

50.     IP address 2600:8805:805:aa00:6512:b059:49d2:fac1 was captured during the file uploading process by the reported Google account in the CyberTip 137041845 (referenced in paragraph 47).

51.     In an administrative subpoena dated September 11, 2023, Cox Communications was asked to provide account information for the IP address 2600:8805:805:aa00:6512:b059:49d2:fac1 (referenced in paragraph 50) for October 28, 2021 at 23:28:22 UTC.  Cox Communications provided a response stating that IP address was assigned from September 20, 2021 through May 30, 2022 to the customer Ryan Bieber, 371 Hickory Point Boulevard, Apartment B, Newport News, Virginia, 23808.

52.     A check on a law enforcement database for residents at 548 Leonard Lane, Newport News, Virginia, found one resident to be Ryan Mathew Bieber.  A check of him through the Virginia Department of Motor Vehicles found his date of birth to be September 29, 1993.

## APPLICATION AND SUMMARY OF FACTS

53.     On the basis of the above described facts, I respectfully submit that there is probable cause to believe that the stated Gmail email account has been used with the transportation, receipt, distribution, and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(1), 2252A(a)(2) and 2252A(a)(5)(B), which prohibits the knowing transportation, receipt or

distribution of child pornography (and any visual depictions of and involving the use of a minor engaging in sexually explicit conduct) in interstate or foreign commerce, and the knowing possession of one or more matters containing an image of child pornography (and any visual depictions of and involving the use of a minor engaging in sexually explicit conduct) that have traveled in interstate or foreign commerce or were produced using material so transported or shipped.

54.    I further submit that probable cause exists to believe that evidence, fruits, and instrumentalities of such violations will be found within the information associated with the Gmail email account (more particularly described in Attachment A) for evidence of activities relating to material involving the sexual exploitation of minors, in violation of 18 U.S.C. §§ 2252A(a)(1), 2252A(a)(2), and 2252A(a)(5)(B). Accordingly, I request that a warrant be issued authorizing FBI agents, with assistance from other law enforcement personnel, to search the accounts, obtain the information in the accounts and to seize all contents referred to in and to seize all contents referred to in B.

55.    Notwithstanding 18 U.S.C. § 2252A or any similar statute or code, Google, Inc. shall disclose responsive data by sending it to 11827 Canon Blvd., Suite 300, Newport News, Virginia, 23606, or via email to hacall@fbi.gov.

FURTHER AFFIANT SAYETH NOT.

_____
Heather Call
Task Force Officer
FBI Child Exploitation Task Force
Federal Bureau of Investigation

18

This affidavit has been reviewed for legal sufficiency by Assistant United States Attorney Devon Heath.

Reviewed: _____

          Devon Heath
          Assistant United States Attorney

Subscribed and sworn before me this 6th day of February 2024, in the City of Norfolk, Virginia.

_____

Honorable Robert J. Krask

United States Magistrate Judge

19